UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

THELMA FLEMMING,

  Plaintiff,                                         CASE NO.:

-VS-

ALLY FINANCIAL INC. and
AMERICAN SUZUKI FINANCIAL
SERVICES COMPANY LLC,

  Defendants.
_____/

## COMPLAINT

COMES NOW Plaintiff, THELMA FLEMMING, by and through the undersigned counsel, and sues Defendants, ALLY FINANCIAL INC., ("Ally") and AMERICAN SUZUKI FINANCIAL SERVICES COMPANY LLC. ("American Suzuki"), (referred to collectively hereinafter as "Defendants") and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

1.     The TCPA was enacted to prevent companies like Ally and American Suzuki, from invading American citizens' privacy and prevent abusive "robo-calls."

2.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.     "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the

1

public want to limit calls, especially cellphone calls, to family and acquantances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4.  "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5.  According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014." https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6.  Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.  Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8.  The alleged violations described herein occurred in Shelby County, Tennessee. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the

judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Bartlett, Shelby County, Tennessee.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendants, Ally, is a corporation which was formed in Delaware with its principal place of business located at 500 Woodward Avenue, 10 Floor, Detroit, MI 48226, and which conducts business in the State of Tennessee through its registered agent, CT Corporation System, 800 S Gay St Ste 2021, Knoxville, TN 37929.

12. Defendants, American Suzuki, is a corporation with its principal place of business located at 7159 Corkland Drive, Jacksonville, FL 32258, and which conducts business in the State of Tennessee through its registered agent, CT Corporation System, located at 800 S Gay Street Suite 2021., Knoxville, TN, 37929.

13. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (901) *** -3831, and was the called party and recipient of Defendants' hereinafter described calls.

14. On several occasions over the last four (4) years, Plaintiff instructed Defendant's agent to stop calling her cellular telephone.

15. Upon receipt of the calls from Ally, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (855) 856-2559, (888) 673-8490, (855) 306-6940, (866) 950-7475, (855) 237-2357, (888) 282-3139 and when those numbers are called, a pre-recorded message answers "Thank you for calling Ally Financial. We

are trying to collect the amount our records indicate you owe us now. Any information we obtain will be used for this purpose. Please hold for the next available agent. Your call may be monitored and/or recorded for quality purposes."

16. In or about October of 2016, Plaintiff began receiving telephone calls to her aforementioned cellular telephone number from American Suzuki seeking to recover an alleged debt. Upon receipt of the calls from American Suzuki, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (888) 803-3174, and when that number is called, a pre-recorded message answers "Hello and welcome to American Suzuki Financial Services. Para asistencia en Español, por favor oprima el dos. You can also visit us twenty four hours a day online at www.Suzukiss.com for must account inquires. Please enter your account number or social security number followed by the pound key, to re-enter your information, press the star key."

17. Upon information and belief, some or all of the calls Ally made to Plaintiff's cellular telephone number(s) were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, and because when she answered a call from Ally, she would hear a pre-recorded message stating the call was from Ally Financial, and to please hold the line for the next available representative.

18. Upon information and belief, some or all of the calls American Suzuki made to Plaintiff's cellular telephone number(s) were made using an "automatic telephone dialing

system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because when she answered a call from the American Suzuki, she would hear either an extended pause before a representative would come on the line, or a pre-recorded message instructing her to hold the line for the next available agent/representative.

19. Furthermore, some or all of the calls at issue were placed by Ally and American Suzuki using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

20. None of Ally or American Suzuki's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

21. Ally and American Suzuki attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

22. Defendant, Ally, consented to and has knowledge and control of the activities of their agents and representatives, supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors, including but not limited to American Suzuki.

23. Under information and belief, Ally, had knowledge of all actions (further described in the complaint) taken by its agents American Suzuki, and specifically instructed and/or conspired with them to take such actions as were ultimately taken in regards to Plaintiff and Plaintiff's Property.

24. At all times material: Ally acknowledged that American Suzuki would act on behalf of Ally with respect to the conduct alleged herein; American Suzuki accepted said undertaking; and Ally retained control over the actions of its authorized agents.

25. Upon information and belief, the aforementioned principal/agent relationship by and between Ally, as principal, and American Suzuki, as agent, was pursuant to an express agreement, implied agreement and/or gratuitous undertaking.

26. Neither Ally nor American Suzuki disclosed to Plaintiff the principal/agent relationship by and between them, but is was nonetheless eventually clear that American Suzuki at all times material, acted as the agent on behalf of Ally with respect to their debt collection activities described herein.

27. In or about October of 2016, Plaintiff answered a call from Ally to her aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Ally her current financial situation, that she would be making her payments as soon as she could, and demanded that Ally cease calling her aforementioned cellular telephone number.

28. During the aforementioned phone call with Ally in or about October of 2016, Plaintiff unequivocally revoked any express consent Ally had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

29. Each subsequent call from Ally and American Suzuki made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

30. Each subsequent call from Ally and American Suzuki made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

31. Additionally, on or about February 2, 2017, due to continued automated calls to her aforementioned cellular telephone number from Ally, Plaintiff again received a call from Ally, met with an automated message, was eventually connected to a live agent/representative of Ally, and informed the agent/representative of Ally that she had previously informed them not to call her cellular phone, and again demanded that Ally cease placing calls to her aforementioned cellular telephone number.

32. Further, on or about February 12, 2017, due to continued automated calls to her aforementioned cellular telephone number from Ally, Plaintiff again received a call from Ally, met with an automated message, was eventually connected to a live agent/representative of Ally and informed the agent/representative of Ally that the calls to her cellular phone were harassing, and demanded that Ally cease calling her aforementioned cellular telephone number.

33. Again, on or about February 24, 2017, due to the continued automated calls to her aforementioned cellular telephone number from Ally, Plaintiff answered a call from Ally, met with an automated message, was eventually connected to a live agent/representative of Ally, and informed the agent/representative of Ally that she was just a few days late on her payment, and again demanded that Ally cease placing calls to her aforementioned cellular telephone number.

34. Despite actual knowledge of their wrongdoing, Ally and American Suzuki continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent Ally and American Suzuki may have had to call her aforementioned cellular telephone number.

35. On at least five (5) separate occasions, Plaintiff has either answered a call from Ally and American Suzuki or returned a call to Ally and American Suzuki regarding her account, held the line to be connected to a live representative, and demanded that Ally and American Suzuki cease placing calls to her aforementioned cellular telephone number.

36. From approximately October of 2016 through the filing of this Complaint, Ally has placed approximately three-hundred (300) calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of thirty-five (35) calls received from February 7, 2017 through February 19, 2017)

37. From approximately October of 2016 through the filing of this Complaint, American Suzuki has placed approximately one-hundred (100) calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "B"** representing a non-exclusive call log of thirty-five (35) calls received from January 22, 2017 through January 29, 2017).

38. Ally and American Suzuki have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiff's cellular telephone in this case.

39. Ally and American Suzuki have corporate policies structured so as to continue to call individuals like the Plaintiff, despite these individuals explaining to Defendants they do not wish to be called.

40. Ally and American Suzuki have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendants, to remove the number.

41. Ally and American Suzuki's corporate policies are structured as to continue to call individuals like the Plaintiff, despite these individuals informing the Defendants that they do not wish to be called.

42. Ally and American Suzuki have had numerous complaints from consumers against them across the country asking not to be called; however, the Defendants continue to call the consumers.

43. Ally and American Suzuki have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

44. Ally and American Suzuki's corporate policies provided no means for the Plaintiff to have her number removed from the call list.

45. Ally and American Suzuki have a corporate policies to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called

46. Ally and American Suzuki willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

47. From each and every call placed without express consent by Ally to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

48. From each and every call without express consent placed by Ally to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants call.

49. From each and every call placed without express consent by Ally to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to

waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

50. Each and every call placed without express consent by Ally to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

51. Each and every call placed without express consent by Ally to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

52. Each and every call placed without express consent by Ally to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

53. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, embarrassment, frustration and aggravation.

54. From each and every call placed without express consent by American Suzuki to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

55. From each and every call without express consent placed by American Suzuki to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line

and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants call.

56. From each and every call placed without express consent by American Suzuki to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

57. Each and every call placed without express consent by American Suzuki to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

58. Each and every call placed without express consent by American Suzuki to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

59. Each and every call placed without express consent by American Suzuki to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

60. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, embarrassment, frustration and aggravation.

**COUNT I**
**ALLY FINANCIAL INC.**
**(Violation of the TCPA)**

61. Plaintiff fully incorporates and realleges paragraphs one (1) through sixty (60) as if fully set forth herein.

62. Defendants, Ally, willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendants that she wished for the calls to stop.

63. Defendants, Ally, repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendants, Ally Financial Inc., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### AMERICAN SUZUKI FINANCIAL SERVICES COMPANY LLC.
### (Violation of the TCPA)

64. Plaintiff fully incorporates and realleges paragraphs one (1) through sixty (60) as if fully set forth herein.

65. Defendants, American Suzuki, willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendants that she wished for the calls to stop.

66. Defendants, American Suzuki, repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or

artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendants, American Suzuki Financial Services Company LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/Mark A. Lambert*
Mark A. Lambert, Esquire (TNB: 22509)
Morgan & Morgan
40 S. Main Street, Suite 2600
One Commerce Square
Memphis, Tennessee 38103
(901) 217-7000 phone
(901) 333-1897 fax
mlambert@forthepeople.com
*Attorney for Plaintiff*

*s/Octavio Gomez*
Octavio Gomez, Esquire
Florida Bar No. 338620
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Primary Email: TGomez@ForThePeople.com
Secondary Email: MMartinez@ForThePeople.com
*Attorney for Plaintiff*